IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

MICHAEL CHAD MCMILLON, :
:
    Plaintiff, :
:
vs. : Civil Action File No.
: **7:08-CV-87 (HL)**
F. ROLLINS and SGT. V. WILLIAMS, :
:
    Defendants. :
_____

**RECOMMENDATION**

Presently pending in this *pro se* prisoner 42 U.S.C. § 1983 action is defendants' motion for summary judgment. (Doc. 16). The undersigned advised plaintiff of the filing and of the importance of filing a response thereto (doc. 24); however, plaintiff has failed to file any response to the motion.

In his unverified complaint, plaintiff alleges that while incarcerated at Thomas County Jail, on March 22, 2008, he attempted to kill himself by cutting his wrists. Plaintiff states he was removed from his cell and placed in another cell "up front." The next day March 23, 2008, defendant Sgt. Williams asked plaintiff what happened the night before. Then she started spraying plaintiff with pepper spray, and defendant Rollins came in and pinned plaintiff down and hit him in the chest. Plaintiff alleges they told him that is what he gets for saying he wanted to fight them.

In determining a summary judgment motion, the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Welch v. Celotex Corp., 951 F.2d 1235 (11th Cir. 1992) (citing Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio corp.,

475 U.S. 574 (1986)).  However, once the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When the nonmoving party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the nonmoving party's claim, or by pointing to specific portions of the record which demonstrate that the nonmoving party cannot meet its burden of proof at trial.  Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-608 (11th Cir. 1991).

The Eighth Amendment's proscription of cruel and unusual punishments  governs prison officials' use of force against convicted inmates. See Whitley v. Albers, 475 U.S. 312, 327, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). When the conduct in question involves any measure taken to prevent a security threat or restore official control, the Eighth Amendment inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or inflicted maliciously or sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21, 106 S.Ct. 1078; see also Hudson v. McMillian, 503 U.S. 1, 6-7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

Discussing this heightened specific-intent requirement in Whitley, the Supreme Court reiterated that force does not violate the Eighth Amendment merely because it is unreasonable or unnecessary: "The infliction of pain in the course of a prison security measure ... does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence

unnecessary in the strict sense." 475 U.S. at 319, 106 S.Ct. 1078. Reviewing the force used to quell a prison riot in <u>Whitley</u>, the Court explained that "whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.' " Id. at 320-21, 106 S.Ct. 1078.

Subsequently, in <u>Hudson v. McMillian</u>, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), the Supreme Court extended <u>Whitley</u> 's holding outside the prison-riot context and applied the same heightened intent requirement to force used as a prophylactic, preventive measure. See <u>Whitley</u>, 475 U.S. at 322, 106 S.Ct. 1078 (acknowledging the distinction). The <u>Hudson</u> Court held that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in <u>Whitley</u>: whether force was applied in a good- faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 6-7, 112 S.Ct. 995. The Court reasoned that even absent the exigency present during a riot-like disturbance, " ' "[p]rison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." ' " <u>Hudson</u>, 503 U.S. at 7, 112 S.Ct. 995 (quoting <u>Whitley</u>, 475 U.S. at 321-22, 106 S.Ct. 1078 (quoting <u>Bell v. Wolfish</u>, 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979))). Thus, <u>Hudson</u> dictates that <u>Whitley</u> 's standard--force applied maliciously and sadistically to cause harm--applies to all claims that prison officials used excessive force against convicted prisoners.

In addition to defining the mental state required, <u>Hudson</u> and <u>Whitley</u> outline five distinct

factors relevant to ascertaining whether force was used "maliciously and sadistically for the very purpose of causing harm": (1) "the extent of injury"; (2) "the need for application of force"; (3) "the relationship between that need and the amount of force used"; (4) "any efforts made to temper the severity of a forceful response"; and (5) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them." Whitley, 475 U.S. at 321, 106 S.Ct. 1078; see also Hudson, 503 U.S. at 7, 112 S.Ct. 995. Whitley also narrows the precise inquiry applicable when deciding whether officials are entitled to judgment as a matter of law:

> courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury.

Whitley, 475 U.S. at 322, 106 S.Ct. 1078

Defendants have both filed affidavits and affidavits of other jail officials in support of their motion for summary judgment. (Docs. 17-21).

On March 13, 2008, the plaintiff was booked into the Thomas County Jail ("the Jail") based on a probation revocation. (Williams Aff., ¶ 4). During his booking at the Jail, plaintiff concealed four razors in his mouth, and it was noted that his behavior suggested a risk of suicide. (Id., ¶ 5). On March 14, 2008, officials at the Jail found that plaintiff had cut the inside of his left arm near his elbow joint with a shiv. (Id., ¶ 7). Following that incident, he was placed in a holding cell. (Id.). The next day, plaintiff cut the inside of his left arm again with a shiv he had made from a metal box, possibly an electrical cover outlet, which was inside the holding cell. (Drawdy Aff., ¶ 5). Plaintiff had concealed the shiv in his mouth.

On March 23, 2008, an inmate confined in plaintiff's dorm reported by intercom that plaintiff had cut himself again. (Williams Aff., ¶ 9). Virginia Williams, who is the chief jailor at the Jail, and Sonja Bradley, who is a medical officer, responded to the intercom call. (Id.). When Williams arrived at plaintiff's dorm, she found him backed up in the corner of his cell in a defensive manner. (Id.). Williams noticed a small cut on the inside of plaintiff's left arm. (Id.). The cut was superficial; however, Williams was concerned that plaintiff was still concealing a razor or shiv. (Id.). Before she entered plaintiff's cell, Williams stated, "Chad, you need to come out of your cell." (Id.). Plaintiff replied, "If anybody comes in here, I'm going to fight." (Id.) Williams advised plaintiff that she would need to use pepper spray if he continued to refuse, but he refused again. (Id.). Williams entered plaintiff's cell and sprayed plaintiff with a burst of pepper spray. (Id., ¶ 10). Williams and Bradley began to escort plaintiff out of his cell, but he began to struggle with the officers and called Williams a "bitch." (Id.). During the struggle, Williams sprayed plaintiff again with pepper spray. (Id.). Plaintiff was taken to a shower, and the pepper spray was flushed with water. (Id.). Bradley asked plaintiff to open his mouth, and he complied. (Id.). A razor was found inside plaintiff's mouth. (Id.).

On April 8, 2008, at approximately 10:30 p.m., plaintiff cut the inside of his left arm again. (Drawdy Aff., ¶ 7-8). Florence Drawdy ("Drawdy"), who is a sergeant at the Jail, responded to the incident. (Id.). Plaintiff's arm was wrapped with a bandage, and he was escorted to a holding cell and placed on suicide watch. (Id. ¶ 8; Williams Aff., ¶ 12). The next morning, on April 9, 2008, Williams arrived at the Jail. (Williams Aff., ¶ 11). Williams was informed of plaintiff's incident and his suicide watch status. (Id., ¶ 12). Williams was also informed that plaintiff was still wearing his inmate uniform, despite requests from officers that he turn over his uniform.

(Id.). Williams was concerned that plaintiff would use his uniform to conceal more shivs or razors or use the uniform itself to harm himself or create more disturbances. (Id. , ¶ 13). Accordingly, Williams went to the holding cell and asked plaintiff to turn over his uniform. (Id.).

Specifically, she stated, "Chad, you know you have to give up your clothes; you are on suicide watch – that's the policy of the Jail." (Id.). Plaintiff replied, "I'm not going to take off my god damn clothes," and "If anybody comes inside this fucking cell, I'm going to fight." (Id.). Williams called for Frankie Rollins, who is a detention officer, to assist her. (Id.).

When Rollins arrived at the holding cell, plaintiff was lying down in his cell. (Rollins Aff., ¶ 6). Rollins asked plaintiff to stand up and turn over his inmate uniform. (Id.). Plaintiff stated, "I'm not moving, nor getting up for no one." (Id.). Rollins advised plaintiff that he would need to use pepper spray if plaintiff did not comply with the request. (Id.). Plaintiff stated, "God dammit, you come inside this cell, we are going to fight." (Id.). Rollins asked plaintiff to turn over his uniform three or more additional times. (Id.). Plaintiff stood up and backed into the corner of his cell in a defensive manner. (Id.). He stated, "You come in and get it yourself." (Id.).

At that point, Rollins opened the door of the holding cell slightly. (Id.). He reached inside the holding cell and sprayed a burst of pepper spray. (Id.) Rollins entered the cell. (Id., ¶ 7). Plaintiff, with his head lowered, charged towards Rollins, as if he planned to tackle Rollins. (Id.). Plaintiff collided with Rollins, and Rollins was able to grab one of plaintiff's arms. (Id.). Plaintiff sat on the ground and stated he would comply with the request to turn over his uniform. (Id.). Plaintiff was handcuffed and escorted to a shower where his uniform was taken and the

pepper spray was flushed with water. (Id., ¶ 8). Plaintiff was not injured nor did he complain of injury. (Id.).

After the April 8-9, 2008 incident described above, plaintiff continued to conceal razors and shivs and use them to cut himself. Specifically, on June 26, 2008, he used two staples to cut the inside of his left arm. (See, Griffin Aff.). On August 12, 2008, plaintiff used a razor to cut the inside of his left arm again. (See, T. Florence Aff.).

Defendants have shown that, at most, plaintiff had a *de minimis* injury. In an excessive force case, the plaintiff must establish the presence of a physical injury that is "more than a de minimis injury provided that the force is not of a sort repugnant to the conscience of mankind." Hudson v. McMillian, 503 U.S. 1, 10 (1992). In Harris v. Garner, the 11th Circuit has likewise interpreted this standard to require that the injury be more than de minimis. 216 F. 3d 970 (11th Cir. 2000).

Moreover, it is clear by the evidence presented by defendants and uncontroverted by plaintiff, that the force in question was not used maliciously or for the purpose of causing harm. Plaintiff has a history of injuring himself and attempting to hide dangerous objects. He has been suicidal at times. Plaintiff has not alleged anything more than a de minimis injury, namely the use of pepper spray and an alleged hit in the chest. Defendants clearly needed to use force both for plaintiff's own protection and to prevent further harm. Defendants warned plaintiff before the use of pepper spray and the physical restraint. Plaintiff clearly would not comply with their instructions. Whitley, 475 U.S. at 321, 106 S.Ct. 1078; see also Hudson, 503 U.S. at 7, 112 S.Ct. 995.

Clearly, plaintiff has failed to rebut the evidence provided by the defendants. Plaintiff has

failed to show any malicious or sadistic use of force on the part of these defendants.  Plaintiff has not provided any evidence or pointed to a lack of evidence to negate the defendants' argument that they are entitled to summary judgment.

Accordingly, it is the recommendation of the undersigned that defendants' motion for summary judgment be **GRANTED**.  Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable Hugh Lawson, United States District Judge, WITHIN TEN (10) DAYS of receipt thereof.

**SO RECOMMENDED**, this 5th day of June, 2008.

$\qquad\qquad\qquad\qquad\qquad\qquad\qquad\qquad$ //S Richard L. Hodge
$\qquad\qquad\qquad\qquad\qquad\qquad\qquad\qquad$ RICHARD L HODGE
$\qquad\qquad\qquad\qquad\qquad\qquad\qquad\qquad$ UNITED STATES MAGISTRATE JUDGE

msd